174

HENRY A. MEYER and IRMA D. MEYER and ALBERT H. KRUSE, Ex Officio Real Estate Commissioner, Plaintiffs and Appellants *v.* MICHAEL C. UNROE, Defendant and Respondent.

No. 10130.
Submitted April 12, 1961. Decided May 17, 1961.
362 P.2d 218.

Robert J. Emmons, Great Falls, for appellants.

D. Gordon Rognlien, Kalispell, James W. Sweeney, Polson, D. Gordon Rognlien, and James W. Sweeney, Polson, argued orally for respondent.

HONORABLE GUY C. DERRY, District Judge sitting in place of Mr. Justice Doyle, delivered the Opinion of the Court.

This cause is before the court on an appeal by the Real Estate Commissioner of the State of Montana, from the judgment of the district court which reversed the order of the Commissioner cancelling a real estate broker's license. No evidence was offered before the district court, and the cause was submitted on the record made before the Commissioner at the hearing before the Commission. The facts are simple.

Michael C. Unroe has been engaged in the real estate business in Lake County, Montana, and licensed as real estate broker. In the course of his business he received a listing on a 320-acre farm owned by one John Horning. Horning at the time of such listing gave a description of the farm. He stated that there were 100 acres of meadow land. It appeared from the testimony that this farm had been sold to Horning through Unroe as a real estate agent, and at that time, the former owner had represented to Horning that the meadow contained 128 acres. Horning, after cutting the hay on the land, came to the conclusion, based on amount of hay produced, that this figure was too high, but he felt that there were 100 acres in the meadow, and he instructed Unroe to advertise the place to that effect.

There is no evidence which showed or from which inference could be drawn, that this representation was not made in good faith or that Horning did not believe it to be true. An advertisement of the farm was placed in the Great Falls Tribune by Unroe describing the place as having 100 acres of meadow land. In response to that advertisement, Henry A. Meyer, one of the appellants herein, entered into negotiations with Unroe, as the real estate agent for the purchase of this ranch. Before a sale was agreed to, Meyer twice went over the land, once on foot and once in a jeep and was well-acquainted with land and buildings. At the time of such inspection he expressed disbelief that the meadow land contained 100 acres. He also made inquiry as to amount and quality of hay produced and there is no intimation he did not get the correct information

as to this matter. A contract was executed and $2,000 earnest money was paid to respondent with the balance to be paid within sixty days. It appears from the evidence that appellants made no complaint about the deal they had made until the time had nearly expired for payment of the balance of the purchase price. Up to that time, nothing had been said by them about any misrepresentation of the amount of acreage in the meadow land. The evidence indicates they were having difficulty getting the money to complete the purchase. They demanded their money back, and upon refusal of their demand, they complained to the Real Estate Commissioner. The commissioner without making any inquiry or any investigation, wrote to respondent, stating that complaint had been made and directed respondent to advise him immediately why the money paid on the purchase price had not been refunded. The only basis for a hearing is the letter addressed to respondent dated March 19, 1958, in which this appears: "The charge made against you by Mr. Meyer is for misrepresenting the number of acres, in a subirrigated meadow in the Sun Valley ranch owned by John Horning at Kila. Montana."

Subsequently a hearing was set by the Real Estate Commissioner, for the purpose of determining whether or not respondent's license as a real estate agent should be revoked. The hearing was conducted in several parts. On some occasions, the respondent and his attorney were not present. Much evidence was introduced, some of it hearsay, and while many objections were made by respondent's counsel, none of them were ruled upon by the Commissioner. After all the evidence had been received, including that based only upon hearsay, and inference based on hearsay, the Commissioner made findings of fact and conclusions of law, based on the purported evidence before him. He found that the statement made in the advertisement was incorrect, in that there were not 100 acres in the meadow land. The basis for this statement was that an aerial map of the premises had been viewed by appellant

Meyer, and from this map, according to Meyer, it would appear that there was less than 100 acres. There was no evidence that the aerial map was properly taken or that it correctly surveyed the premises.

Sometime after Meyer had refused to complete the transaction, the Commissioner had a survey made of the meadow land. The surveyor testified at a hearing at which neither respondent nor his attorney were present, that the meadow land was less than 100 acres, but there is considerable doubt as to what was included in ''meadow''. The Commissioner found that the respondent in advertising the property had advertised it exactly as he had been instructed to do so by the owner of the land. The Commissioner did not point out that appellant Meyer was not confused by the advertisement because in making two inspection trips over the land, and before he made the contract, he had stated his opinion that it was not 100 acres and had also stated that it was the smallest 100 acres he had ever seen. The evidence clearly showed that neither respondent nor Horning knew the exact area in the meadow land, but that the statement was made in good faith and in the belief it was true. The tract included several clumps of willows which could be cleared out and which Horning offered to clear out in order to guarantee a full 100 acres in the meadow, or to allow him the sum of $500 if he wished to do the work himself.

It should be pointed out that the right to sell real estate for commission is a valuable right to a man in the position of the respondent. It appears without contradiction that he had been engaged in the real estate business for some twenty-seven years and apparently with some success, and this was the first time any charge of misconduct had ever been made against him.

The argument of appellants proceeds along the line that since the evidence shows that the tract constituting the so-called meadow land did not actually amount to 100 acres, that this is a fraud upon the purchaser, and that the real

estate agent is tainted with the fraud and must be made to answer for such statement by having his license revoked.

It is suggested, and apparently seriously urged by the Commissioner that when a real estate agent accepts a listing on a farm, the burden is upon him to establish that it contains the exact acreage advertised, and if necessary, to make a survey for that purpose before offering it to the public, or else run the risk of losing his license for misrepresentation.

A great many cases are cited by appellants to the general effect that where a person makes a representation concerning a material matter not warranted by any information possessed by him or where it does not appear that he had reasonable grounds for believing such assertion to be true, even though believed by the party making it, this is equivalent to the assertion of a fact which the party knew to be untrue, and constituted fraud and deceit. All of these cases have to do with a situation where the landowner made a misrepresentation to a prospective purchaser, where the action involved is one for rescission of the contract. None of the cases cited have application to a case where a real estate agent was denied his license by reason of a representation honestly made, and based upon information supplied to the real estate agent by the owner of the land to be sold. Some of these cases also touch on the question of the liability of an owner for the representations of his agent. If this were an action for rescission of the contract, then such citation of authority might have some application, but obviously does not apply to a statute, penal in nature, which would deprive a man of his right to conduct business, which the Commissioner would enforce here.

Appellants state in their brief that there are seven factors considered in determining the presence or absence of fraud, with misrepresentation being considered the same as fraud. Accepting the premise laid down by them, it is only necessary to consider one of the contentions, i. e., that representation must be false and the seller must know it is false. There

is no competent evidence in the transcript which would show that the representation that there were 100 acres in the meadow land was in fact, false. In any event, it is certain that there is no evidence of any kind which would justify the finding that the respondent at the time the advertisement was inserted in the newspaper, knew that the statement was false, or that he did anything by way of representation as to the acreage involved, which would justify the finding that he knew such representation was false at the time the advertisement was inserted in the newspaper.

It follows that the decision of the district court was correct and that the judgment should be affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.